IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CIVIL ACTION NO.  3:03-cv-568-J-25
BANKRUPTCY NO.  00-01047-3P7
ADVERSARY CASE NO.  00-354

MINDY M. WEISS, APPELLANT and CROSS-APPELLEE

v.

GORDON P. JONES, APPELLEE and CROSS-APPELLANT

Appeal from the United States Bankruptcy Court
for the Middle District of Florida, Jacksonville Division

**ORIGINAL BRIEF OF MINDY M. WEISS, APPELLANT and CROSS-APPELLEE**

AKERMAN SENTERFITT

David E. Otero
Florida Bar No. 0651370
Jacob A. Brown
Florida Bar No. 0170038
50 N. Laura St., Suite 2500
Jacksonville, FL 32202
904-798-3700 Telephone
904-798-3730 Facsimile

ATTORNEYS FOR MINDY M. WEISS

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION ............................ 1

STATEMENT OF ISSUES RAISED ON APPEAL ...................................................... 1

STATEMENT OF THE CASE ..................................................................................... 3

I.      Nature of the Case ....................................................................................... 3

II.     Course of the Proceedings .......................................................................... 3

III.    Disposition in the Court Below .................................................................. 5

IV.     Statement of Relevant Facts ....................................................................... 6

        A.      The Establishment of Trusts .......................................................... 7

        B.      The Sale of the Homestead ............................................................. 7

        C.      The California Litigation ................................................................ 9

        D.      The MTLC and HDC Transactions ................................................ 9


ARGUMENT ............................................................................................................ 10

I.      The Judgment must be vacated because entry of a judgment for damages
        under Fla. Stat. §§ 726.108, 726.109 was not an appropriate remedy under
        Fla Stat. ch. 726 ........................................................................................ 10

II.     Because Doughty had no "Claim", and thus was not a "Creditor" at the
        time of sale of the Homestead, the Bankruptcy Court erred in finding
        liability under Fla. Stat. § 726.105 ........................................................... 10

III.    The Bankruptcy Court erred in applying the doctrine of estoppel and
        failed to determine the appropriate consideration paid for the Homestead ........ 14

IV.     The sale of the Homestead was a transfer of exempt property and thus
        not a fraudulent transfer under Fla. Stat. § 726.105 ................................. 15

V.      The Bankruptcy Court erred in failing to consider Fla. Stat. § 193.011
        and other overwhelming evidence as to the value of the Homestead at
        the time of the sale ..................................................................................... 20

**CONCLUSION** ........................................................................................ 22

**REQUEST FOR ORAL ARGUMENT** ............................................................223

**CERTIFICATE OF SERVICE** ......................................................................24

{JA124643;4}

## TABLE OF AUTHORITIES

**Page**

Caselaw

*Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145 (Fla. 4th DCA 1995)...............................15

*Ballato v. Ballato*, 190 B.R. 447 (M.D. Fla. 1995) ...........................................................2

*Bay View Estates Corp. v. Southerland*, 154 So. 894 (Fla. 1934) ...........................................17

*Bessemer Properties, Inc. v. Gamble*, 27 So. 2d 832 (Fla. 1946)............................................17

*BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)................................................................21

*Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002)........................................15, 18

*Cioffe v. Morris*, 676 F.2d 539 (11th Cir. 1982) ......................................................................14

*Cohen v. Shannis (In re Shannis)*, 237 B.R. 862 (Bankr. M.D. Fla. 1999) ............................21

*Coleman v. Williams*, 200 So. 207 (Fla. 1941) ........................................................................19

*Colwell v. Royal Int'l Trading Corp. (In re Colwell)*, 196 F.3d 1225 (11th Cir. 1999) ...........20

*Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145 (C.D. Cal. 2001) .................................13

*Green v. State*, 604 So. 2d 471 (Fla. 1992)...............................................................................19

*Hansard Constr. Corp. v. Rite Aid of Florida, Inc.*, 783 So. 2d 307 (Fla. 4th DCA 2001)......13

*Havoco of America, Ltd. v. Hill*, 790 So. 2d 1018 (Fla. June 21, 2001)........................5, 10, 11

*Hill v. First Nat'l Bank*, 75 So. 614 (1917)...............................................................................20

*In re Lankry*, 263 B.R. 638 (Bankr. M.D. Fla. 2001) ..............................................................17

*In re McAtee*, 154 B.R. 346 (Bankr. N.D. Fla. 1993) ..............................................................20

*In re O'Connor*, 258 F.3d 392 (5th Cir. 2001)........................................................................1,2

*In re Ormond Beach Assoc. Ltd.*, 184 F.3d 143 (2d Cir. 1999).................................................14

*In re Richards & Conover Steel, Co.*, 267 B.R. 602 (8th Cir. BAP 2001) ...............................13

*In re Tabone*, 247 B.R. 541 (Bankr. M.D. Fla. 2000)................................................................17

*Marine Transp. Serv. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, F.3d 1133 (11th Cir. 1994) ................................................................................1,16

*Moyer v. Clark*, 72 So. 2d 905 (Fla. 1954) ................................................................18

*Northern Tankers (Cyprus) Ltd. v. Backstrom*, 968 F.Supp. 66, 67 (D.Conn. 1997)..............13

*Ocklawaha River Farms Co. v. Young*, 74 So. 644, 647 (Fla. 1917).......................................16

*Proferra v. Lombardo*, 600 N.E.2d 360 (1991) ........................................................13

*Ramsey v. Jonassen*, 737 So. 2d 1114, 1115 (Fla. 2d DCA 1999) .........................................15

*Reliable Fin. Co. v. Axon*, 336 So. 2d 1271, 1273 (Fla. 2d DCA 1976)..................................19

*Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)............16

*St. Joe Paper Co. v. Brown*, 223 So. 2d 311, 313 (Fla. 1969) ..................................................21

*State v. Jett*, 626 So. 2d 691, 693 (Fla. 1993) .........................................................................19

*State Dept. of Revenue v. Adkinson*, 409 So. 2d 53, 55-56 (Fla. 1st DCA 1982)....................21

<u>Statutes</u>

11 U.S.C. § 544...................................................................................................................3, 4, 14

11 U.S.C. § 548...........................................................................................................................4

§ 56.29, Fla. Stat. ..................................................................................................................4, 12

§ 193.011, Fla. Stat. ...................................................................................................................21

§ 695.01, Fla. Stat. .....................................................................................................................19

§ 726, Fla. Stat. ...............................................................................................................3, 10, 20

§ 726.102, Fla. Stat. ..............................................................................................................14, 17

§ 726.104, Fla. Stat. ...................................................................................................................16

§ 726.105, Fla. Stat. ...........................................................................................................4, 11, 14

§ 726.106, Fla. Stat. ................................................................................................4, 11

§ 726.107, Fla. Stat. ....................................................................................................17

§ 726.108, Fla. Stat. .......................................................................................10, 13, 23

§ 726.109, Fla. Stat. .......................................................................................10, 14, 23

§ 726.110, Fla. Stat. ................................................................................................4, 12

§ 726.112, Fla. Stat. ............................................................................................12, 13

Fla. Const. Art. X, § 4 ..................................................................................................18

## STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a).

## STATEMENT OF ISSUES RAISED ON APPEAL

Defendant, Mindy M. Weiss, pursuant to Rule 8006, Federal Rules of Bankruptcy Procedure, sets forth the following issues to be presented in this appeal:

I.     Whether the Bankruptcy Court erred in entering a judgment for monetary damages under Fla. Stat. §§ 726.108, 726.109 when there was not "voidable" transfer and Weiss was not on notice of the relief sought by the Trustee and awarded by the Court?

Standard of Review:  When a district court reviews a bankruptcy court's decisions, conclusions of law are reviewed de novo. *In re O'Connor*, 258 F.3d 392 (5th Cir. 2001).

II.    Whether the Bankruptcy Court erred in finding there was a fraudulent transfer under Fla. Stat. § 726.105 when there was no "claim" for the complaining "creditor" to proceed upon at the time of the sale of the Homestead?

Standard of Review:  When a district court reviews a bankruptcy court's decisions, conclusions of law are reviewed de novo. *In re O'Connor*, 258 F.3d 392 (5th Cir. 2001).

III.   Whether the Bankruptcy Court erred in applying the doctrine of estoppel as to the amount of consideration paid for the Homestead?

Standard of Review:  Whether the Bankruptcy Court erred in applying the doctrine of estoppel in this case is reviewed de novo. *Marine Transp. Serv. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1138-1139 (11th Cir. 1994).

**IV.** Whether the Bankruptcy Court erred in finding that the sale of the Homestead was not an appropriate alienation of Florida homestead property and did not constitute a transfer of exempt property?

Standard of Review: When a district court reviews a bankruptcy court's decisions, conclusions of law are reviewed de novo. *In re O'Connor*, 258 F.3d 392 (5th Cir. 2001).

**V.** Whether the Court erred in failing to consider Fla. Stat. § 193.011, tax assessed values, and other overwhelming evidence of value of the Homestead at the time of the sale?

Standard of Review: This issue presents mixed issues of fact and law. This Court's standard of review of the Bankruptcy Court's findings of fact is clearly erroneous, while the standard of review of issues of law is de novo. *Ballato v. Ballato*, 190 B.R. 447, 448 (M.D. Fla. 1995).

# STATEMENT OF THE CASE[1]

**Nature of the Case**

This is a fraudulent transfer case based upon Florida law. (App. E at ¶2) *See* Fla. Stat. ch. 726. The Plaintiff/Appellee and Cross-Appellant, Gordon P. Jones (the "Trustee"), is the bankruptcy trustee chapter 7 bankruptcy case of Robert J. Hill ("Hill"). The Defendant/Appellant and Cross-Appellee, Mindy M. Weiss ("Weiss") is Mr. Hill's daughter. The Trustee alleged in his Complaint that Weiss's purchase of her Florida homestead (the "Homestead") constituted a fraudulent transfer and was avoidable under Fla. Stat. ch. 726 as made applicable to this proceeding by 11 U.S.C. § 544. (App. E)

## II.    Course of the Proceedings

The full procedural history is long and complex. The underlying claim of Andrew Doughty ("Doughty"), upon which the Trustee proceeds, arose from litigation in California. In 1992, the California court determined that Hill was not liable to Doughty. (App. N) Doughty's claim was liquidated at $0.00, from 1992 to 1998, as the California court found no judgment for damages existed as to Hill. (App. N; V; O p.26) Not until after a lengthy appeal was Doughty awarded a judgment by the California court. In fact, until at least September 11, 1998, the California court held that no judgment for damages existed. (App.

---

[1] The Bankruptcy Court's March 18, 2003 Findings of Fact and Conclusions of Law is located behind Tab A of Weiss's Appendix, filed herewith for the Court's convenience. Further references to this document will be identified by the letter "A" followed by a page number (e.g., App. A p.2). The Bankruptcy Court's March 18, 2003 Judgment is located behind Tab B of Weiss's Appendix. Additionally, the entire trial transcript and the exhibits admitted during the trial are part of the record. However, for the Court's convenience, excerpts of cited portions of the transcript and cited exhibits are included in Weiss's Appendix and are identified by the letter on the tab of the Appendix followed by a page number when appropriate (e.g., App. O p.26).

V)   Doughty subsequently sought to domesticate his judgment in Florida and initiated various fraudulent transfer actions, including an action initiated June 26, 1998 against Weiss and Hill in which Doughty sought to set aside the sale of real property from Hill to Weiss (the "State Court Action"). (App. C)   In the State Court Action, Doughty only brought one count against Weiss which was under Fla. Stat. § 726.105(1)(a). (App. C p.3)   Doughty did not assert claims under Fla. Stat. §§ 726.105(1)(b), 726.106 or 56.29.   Additionally, Doughty only sought a judgment avoiding the Hill's sale of the Homestead.   Doughty did not seek monetary damages against Weiss nor the imposition of an equitable lien against the Homestead.  (App. C p.3)   On January 4, 1999, Weiss filed an Answer and Affirmative Defenses to Amended Complaint in the State Court Action.  (App. D)

On February 14, 2000 (the "Petition Date") Hill filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division thus staying the State Court Action.   On November 9, 2000, the Trustee filed his Complaint against Weiss in the adversary proceeding from which this appeal arises and asserted the rights of Doughty under 11 U.S.C. § 544(b)(1). (App. E)   The Trustee is standing in the shoes of Doughty and is limited to relief Doughty may have been entitled to on the Petition Date. (App. E at ¶6)   The reason the Trustee brought his complaint based upon Doughty's claims in the State Court Action is that any claim the Trustee had in his own capacity would or by virtue of standing in the shoes of any creditor be time barred because no other party filed a fraudulent transfer action within four years of the sale of the Homestead. *See* 11 U.S.C. §§ 544, 548; Fla. Stat. § 726.110.

Only one of the claims made by the Trustee was brought by Doughty in the State

Court Action. (App. C; E) Nevertheless, the Trustee asserted additional claims under Fla. Stat. §§ 726.105(1)(b), 726.106 or 56.29. (App. E) The Trustee asserted that he was entitled to a judgment against Weiss avoiding the transfer and directing Weiss to return to the Trustee the Homestead plus interest, court costs and such other relief as is just and proper. (App. E) On December 18, 2000, Weiss answered the Complaint and filed a proposed Amended Answer on June 26, 2001 after the Florida Supreme Court issued its opinion in the seminal case of *Havoco of America, Ltd. v. Hill*, 790 So. 2d 1018 (Fla. June 21, 2001). (App. F; G) On July 9, 2001, the Court entered an Order Granting Defendant's Motion for Leave to File Amended Answer (App. H). The Trustee failed to amend his Complaint post-*Havoco*. (App. A p.13).

The trial was held before Judge George L. Proctor sitting without a jury and was spread over the course of four days between June 7, 2001 and August 29, 2002. On January 15, 2003, after the close of evidence, Judge Proctor required both parties to submit post-trial briefs with no opportunity for response. (App. I; J). The Trustee did not seek a judgment for monetary damages in any court paper or at trial until he requested damages in his post-trial brief. the Trustee sought a judgment for monetary damages for the first time. (App. J)

## III.   Disposition in the Court Below

The Bankruptcy Court entered Findings of Fact and Conclusions of Law (the "Findings") (App. A) and a corresponding money judgment in favor of the Trustee and against Weiss on March 18, 2003 (the "Judgment") (App. B) The Bankruptcy Court found that the Homestead was exempt property and not subject to the claims of creditors, including the Trustee. (App. A) The Bankruptcy court also found that the Homestead was not a

voidable transfer. (App. A) The Judgment was in the amount of $396,000.00 plus pre-judgment interest from September 30, 1995 plus costs together with interest at the legal rate of 1.16%. (App. B) On March 24, 2003, Weiss timely filed a Motion for Reconsideration and to Alter or Amend Findings of Fact and Conclusions of Law and Corresponding Judgment (the "Motion for Reconsideration"). (App. K) On April 17, 2003, the Court entered an Order denying the Motion for Reconsideration. (App. L) On April 28, 2003, Weiss timely filed a Notice of Appeal. (App. M). On May 1, 2003, the Trustee timely filed a cross appeal. Weiss does not dispute the Bankruptcy Court's findings of fact in paragraphs 1-10 of the Findings, but does challenge the Court's application of those findings of fact to applicable law, the Bankruptcy Court's failure to consider overwhelming evidence as to critical issues, the Bankruptcy Court's legal conclusions and the Judgment. (App. A pp.1-3; B).

## IV.    Statement of Relevant Facts

While the procedural history of the legal proceedings leading up to this case are complex, the basic relevant facts of this particular case are not. This case simply deals with the sale of Hill's Homestead to Weiss. The Bankruptcy Court has confused the sale of the Homestead to Weiss with Hill's transactions with Hill Development Company, Ltd. ("HDC") and MTLC Investments, Ltd. ("MTLC") which were consummated over a year and a half prior to the sale of the Homestead. (App. A p.2) This proceeding simply involves the sale by Hill of the subject home so he could move to another less expensive home in the country. He sold his already exempt homestead to Weiss, who was interested in purchasing the subject homestead property. (App. I.) Weiss's motivations were in no way motivated by

fraud, but rather Weiss's desire to establish a home for her son and husband. (App. I) These motivations are further evidenced by the good and valuable consideration Weiss paid Hill for the Homestead and by the vast sums of money Weiss spent on improvements to the Homestead after the purchase. (App. I)

### A.    The Establishment of Trusts

Prior to Hill's ever meeting Doughty, Hill established irrevocable trusts for Hill's four daughters (including Weiss) which were administered by an independent trustee, David Schacter. (App. I p.2; W p.196) Over time Hill gifted shares of stock in a company run by Hill to the trusts. (App. I p.2; W pp.195-196) Ultimately each trust received approximately $5 million as a result of the sale of that company. (App. I p.3; W p.199) After the sale of this company, Hill funded a number of capital intensive business ventures and, with the consent of the trustee and his daughters, began borrowing money from his daughters' trusts. (App. I p.3; W pp.200-203) Hill executed promissory notes to the trusts each time he borrowed money with favorable rates of interest. (App. I p.4; W pp.205-207) Additionally, Hill remained current on the terms of those notes until the early 1990s. (App. I p.4) The limit of loans from each trust were capped at $500,000.00. Hill had still not encountered Doughty until after he had borrowed the vast majority of the funds that he would borrow from his daughters' trusts.

### B.    The Sale of the Homestead.

On December 26, 1984, Hill took title to the Homestead which remained Hill's Florida homestead until he moved out almost ten years later. (App. I p.2) On April 1, 1994, Hill purchased another home with some land in Palm Beach Gardens, Florida for

$225,000.00 so that he could keep some horses.   (App. I p.8)   Hill moved out of the Homestead in April or May 0f 1994.  (App. at p.2)   Around the same time, Hill listed the Homestead with a realtor for a purchase price of $1,000,000.00, but later acknowledged that the realtor may not have been able to sell the Homestead for this price.  (App. A p.2; I p.10; W pp.224-229)   Hill requested that the realtor cease all sales efforts after expressed an interest in purchasing the Homestead and made a $10,000 deposit in April 1994.  (App. A p.2; I p.10; W p.229)

Around the same time, Hill conveyed the Homestead to Weiss by quit claim deed dated May 20, 1994.  (App. A. p.2; I p.9; W pp.224-228)  Weiss immediately moved into the Homestead.   (App. I)   Over time, Weiss paid good and valid consideration totaling $938,000.00[2], which included $171,000.00 in cash and cancellation of two promissory notes owed by Hill to Weiss, one with a principal balance of $500,000.00 plus accrued interest of $42,000.00 and the other with a principal balance of $125,000.00.  (App. Z; App. I p.11) Weiss thought that the amount Hill wanted for the Homestead was too high, but eventually Weiss relented.[3]  (App. I p.13; X p.312)   Weiss began moving into the Homestead in May 1994 as Hill was moving out.   (I p.10)   Since that time Weiss has spent $368,245 on improvement to the Homestead.

---

[2]   The Bankruptcy Court found that Weiss paid Hill $542,000 for the Homestead (App. A p.8), which matches the principal value of the $500,000 promissory note and the accrued interest on that note (App. A,I).  In addition, however, the Bankruptcy Court found that " Clearly, the $171,000 in checks that Defendant gave Debtor were linked to the sale of the home.  Defendant gave them to Debtor close to the time she moved into the home and the checks state that they are for a deposit on the home." (App. A pp. 7,8; Z)

[3] The phrase *emptor emit quam minimo potest, venditor vendit quam maximo potest* is on point, meaning the buyer buys for as little as possible, the seller sells for as much as possible.

### C.  The California Litigation

On April 8, 1988, Hill and others, believing they had been aggrieved by Doughty, initiated a law suit against Doughty in Los Angeles, California. (the "California Litigation"). On May 31, 1988, Doughty filed a cross complaint in the California Litigation. Hill was advised by his counsel that Doughty's cross claim was a typical retaliatory claim and was without merit.   On February 10, 1992, the California Court issued a Judgment Notwithstanding Verdict and reversed a jury verdict against Hill. (App. N) Terence J. Mix, counsel for the Trustee in the underlying adversary proceeding and for Doughty, testified that the JNOV was essentially a total reversal of the jury verdict against Hill and that there was no enforceable judgment against Hill until November 1997. (App. O p.26)  As late as September 11, 1998, the California court reiterated that no judgment for damages existed as to Hill. (App. V).

### D.  The MTLC and HDC Transactions

The Bankruptcy Court opened its Findings noting that Doughty obtained a judgment on December 11, 1991 and that Hill began to transfer nonexempt assets soon after. (App. A pp. 1-2)  However, the Court makes no mention of the fact that the sale of the Homestead to Weiss took place over a year and a half after the formation of MTLC and HDC to which the Court is referring. (App. A)  Nor does the Court consider the fact that Doughty's judgment was vacated by the JNOV on February 10, 1992 and liquidated at $0.00. (App. A; N) Furthermore, in its Findings, the Court both takes Hill's testimony out of context. (App. A pp.3-4)  Hill's testimony refers to the HDC and MTLC transactions and not to the sale of the Homestead (App. W pp.135-136).

**ARGUMENT**

**I.     The Judgment must be vacated because entry of a judgment for damages under Fla. Stat. §§ 726.108, 726.109 was not an appropriate remedy under Fla. Stat. ch. 726.**

While the Bankruptcy Court was correct in finding that Weiss was entitled to an exemption under Florida's liberal homestead law and that the sale of the Homestead was not a voidable transfer (App. A p.13), the Court committed reversible error in awarding a money judgment to the Trustee. *See* Fla. Const. Art. X, § 4; *Havoco Of America, Ltd. v. Hill*, 790 So. 2d 1018 (Fla. 2001). Quoting Fla. Stat. § 726.109(2) & (3), the Bankruptcy Court awarded a money judgment to the Trustee in an amount equal to the value of the Homestead at the time of the transfer. (App. A p.13; B) The relief sought by the Trustee under Fla. Stat. § 726.109, cited in the Trustee's post-trial brief (App. J) and discussed by the Court in its Findings (App. A pp.13-14), was erroneous because the Bankruptcy Court found that the sale of the Homestead was not a "voidable" transfer under any of the provisions of Fla. Stat. ch. 726. (App. A p.13). *See* Fla. Stat. §§ 726.108, 726.109. To be entitled to any of the specific relief provided for Fla. Stat. ch. 726, there must have been a transfer "voidable in an action by a creditor". *See* Fla. Stat. §§ 726.108; 726.109(2) ("Except as otherwise provided in this section, **to the extent the transfer is voidable by a creditor under s. 728.108(1)(a),** the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim, whichever is less." (emphasis added)). Since there was not a "voidable" transfer, the Bankruptcy Court erred in relying on Fla. Stat. § 726.109 to award a money judgment.

Additionally, the Bankruptcy Court committed reversible error in relying on *Havoco* as authority for awarding a judgment and for implicating constructive notice to Weiss that the "Trustee would seek a money judgment in lieu of the return of the" Homestead.  (App. A pp.13-14)  The *Havoco* decision provides no authority for awarding a money judgment in lieu of setting aside a transfer.  Rather, *Havoco*'s clear mandate is that Fla. Stat. ch. 726 "has no effect on the constitutionally created homestead".  790 So. 2d at 1029.  The only discussion in *Havoco* on any possible alternatives to setting aside homestead protection for fraudulent conveyances is the extreme remedy of an equitable lien.  *See* 790 So. 2d at 1023-28 (noting that imposition of equitable liens are rare and "always with due regard to the exceptions" to Florida's homestead exemption).  The Bankruptcy Court did not find that an equitable lien in favor of the Trustee was appropriate and instead awarded a money judgment.

Weiss was not on notice that the Trustee sought a money judgment.  The Trustee's prayer for relief seeks "a judgment against Weiss avoiding the transfer and directing Weiss to return to the Trustee the Real Property transferred plus interest, court costs, and such other relief as is just and proper."  (App. E p.7)  The Trustee's prayer for relief is void of a request for a money judgment.  Additionally, in spite of the fact that Weiss amended her answer in the wake of the *Havoco* decision, the Trustee chose not to amend his Complaint even though he was then on notice that the sale of the Homestead could not be avoided under Florida law. (App. A p.13)

In addition, in the State Court Action, Doughty only brought one count against Weiss which was under Fla. Stat. § 726.105(1)(a).  Doughty made no claims under Fla. Stat. §§

726.105(1)(b), 726.106 and 56.29 in the State Court Action and only sought a judgment avoiding the sale of the Homestead, not a monetary judgment against Weiss. While the Bankruptcy Court did not address relief under these statutes (App. A p.10), it should be noted that the Trustee is not entitled to any relief under these statutes because, among other things, Doughty was not a creditor at the time of the sale and the Trustee would be barred from raising new claims pursuant to Fla. Stat. § 726.110.

Notwithstanding the other relief to which Weiss is entitled and which she seeks through this appeal, principles of due process warrant reversing the Judgment as Weiss had no notice that the Trustee sought a money judgment and, prior to this appeal, has not had the opportunity to address the issue of whether a money judgment is appropriate. The Bankruptcy Court's post-trial ruling requested simultaneous submission of post-trial briefs and did not allow for responsive briefing. Following the allegations raised and prayers stated in the Trustee's pleadings and the trial before the Bankruptcy Court, as well as the *Havoco* decision, Weiss only argued in her post-trial brief that the sale of the Homestead could not be set aside and that the Trustee is not entitled to an equitable lien. As such, Weiss was denied due process as she was not afforded an opportunity to respond to claims and relief sought by the Trustee that were raised for the first time in the Trustee's post-trial submissions.

As to the issue of whether the Bankruptcy Court could award a money judgment if properly plead, there is a split of decisions among the states enacting the Uniform Fraudulent Transfer Act ("UFTA") on the issue of damages despite the UFTA's goal of uniform application and construction of the law. *See* Fla. Stat. § 726.112. The one Florida court that has addressed this issue found that damages were appropriate but admitted the remedies

{JA124643;4}

12

under the UFTA were equitable in nature. *See Hansard Constr. Corp. v. Rite Aid of Florida, Inc.*, 783 So. 2d 307 (Fla. 4th DCA 2001) (citing Fla. Stat. § 726.112 and *Proferra v. Lombardo*, 600 N.E.2d 360 (1991)). However, other courts addressing this issue note that the UFTA is limited to equitable remedies and that courts finding UFTA violations cannot award damages. *See Forum Ins. Co. v. Devere Ltd.*, 151 F.Supp.2d 1145, 1148 (C.D. Cal. 2001); *Northern Tankers (Cyprus) Ltd. v. Backstrom*, 968 F.Supp. 66, 67 (D.Conn. 1997).

Accordingly, at best, the Trustee is limited to "relief the circumstances may require" and such relief is expressly subject "to applicable principles of equity and in accordance with the applicable rules of civil procedure." *See* Fla. Stat. § 726.108(c). While the Bankruptcy Court did properly deduct the consideration of $542,000 in notes, the Bankruptcy Court failed to deduct the $171,000 Weiss paid in cash. The Bankruptcy Court also failed to account for Weiss's expenditures of over $368,245 in improvements to the Homestead. (App. I pp. 15-16) Weiss would not likely have made these improvements if she were aware of any potential for her purchase to be set aside. Accordingly, after making the appropriate deductions for equitable considerations, the Trustee is not entitled to any money judgment; $938,000 (Court determination of value of home) - $542,000 (Court determination of value of promissory note) - $171,000 (cash payment determined by Bankruptcy Court) - $368,245 (improvements made to the Homestead)= less than $0.00.

Finally, the Bankruptcy Court did not apply the "in accordance with the applicable rules of civil procedure" requirement of Fla. Stat. § 726.108(c). The Trustee also failed to file any type of a motion seeking to have the pleadings conform to the evidence. *See In re Richards & Conover Steel, Co.*, 267 B.R. 602 (8th Cir. BAP 2001). The issue of whether

the Trustee was entitled to a money judgment was not presented in the pleadings and not tried with the express or implied consent of the parties. *See Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982). Because the applicable rules of civil procedure were not followed by the Trustee because of his failure to request money damages, no money judgment can be awarded to the Trustee.

**II.   Because Doughty had no "Claim", and thus was not a "Creditor" at the time of sale of the Homestead, the Bankruptcy Court erred in finding liability under Fla. Stat. § 726.105.**

In order to enter its Judgment under Fla. Stat. § 726.109(2) and (3), the Bankruptcy Court found underlying liability under Fla. Stat. § 726.105 (1)(a). (App. A) Fla. Stat. § 726.105 provides in pertinent part that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor;

Fla. Stat. § 726.105. Accordingly, Fla. Stat. § 726.105 does not provide relief when the claim of a <u>creditor</u> has been liquidated at $0.00 at the time the transfer was made.

In order for a transfer to be set aside, there must be a creditor. *See In re Ormond Beach Assoc. Ltd.*, 184 F.3d 143 (2d Cir. 1999) (requiring that a creditor have a claim in existence when the transfers were made). Fla. Stat. § 726.102(4) defines "creditor" as "a person who has a claim." "Claim" means "a right to payment." Fla. Stat. § 726.102(3). The Trustee, stepping into the shoes of Doughty pursuant to 11 U.S.C. § 544, has no greater rights than Doughty had in the State Court Action. By virtue of the JNOV entered against Doughty on February 10, 1992 until at least November 14, 1998 after a lengthy appeal there

was an adjudication that Hill had no liability to Doughty.[4]  (App. N; V)  Because the sale of

the Homestead took place in 1994 and 1995, at the time of the sale, Doughty had no right to

payment and thus had no claim.     *See Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145,

152 (Fla. 4th DCA 1995) (finding that transfers that do not interfere with the existing rights

of creditors cannot be presumed to be fraudulent).

**III.     The Bankruptcy Court erred in applying the doctrine of estoppel and failed to determine the appropriate consideration paid for the Homestead.**

Citing no authority, the Bankruptcy Court held that Weiss was estopped from arguing

that the consideration she gave Hill for the Homestead exceeded $542,000.00. (A-8)

Through this holding, the Bankruptcy Court committed reversible error as neither the

doctrine of judicial estoppel or equitable estoppel precluded consideration of the value of the

consideration Weiss paid for the Homestead.[5]   Nor did these principles prevent the

Bankruptcy Court from looking beyond the amount on the recorded deed to determine the

value of the consideration Weiss paid for the Homestead.

The doctrine of judicial estoppel, similar under federal and Florida law, bars parties

from taking inconsistent positions within judicial proceedings.   *See Burnes v. Pemco

Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002); *Ramsey v. Jonassen*, 737 So. 2d 1114,

1115 (Fla. 2d DCA 1999).   To establish that a party is prohibited from taking a position

under the doctrine of judicial estoppel, it must be shown that allegedly inconsistent positions

---

[4]  Doughty's unsecured claim in the underlying bankruptcy provides that judgments against Hill were obtained on December 11, 1999 and January 20, 2000. (U)

[5]  The Bankruptcy Court did not distinguish as to whether it was applying judicial or equitable estoppel in its Findings. (App. A p. 8).

were made under oath in a prior proceeding and that such inconsistencies have been calculated to make a mockery of the judicial system. *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001). The doctrine of equitable estoppel requires: (1) a representation of fact by one party contrary to a later asserted position; (2) good faith reliance by another party upon the representation; and (3) a detrimental change in position by the later party due to the reliance. *See Marine Transp. Services Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1138-1139 (11th Cir. 1994) (noting similarity between state and federal principles of equitable estoppel in Florida). Neither of these doctrines were intended for the application made by the Bankruptcy Court. Thus the Court committed reversible error in applying any doctrine of estoppel in its Findings.

Weiss clearly paid $171,000.00 in cash for the Homestead in addition the forgiving promissory notes obligations owed by Hill in the amount of $542,000 and $125,000 and has continuously maintained that the cash and forgiveness of the notes constituted consideration for the Homestead.[6] Doughty presented no evidence whatsoever that he relied on Weiss's recording of $542,000.00 as the sales price, nor would he have any basis to do so. For these reasons, the Bankruptcy Court committed reversible error when holding that Weiss was estopped from arguing that the consideration she paid exceeded $542,000.

---

[6] Because antecedent debt is fair consideration and is sufficient to validate transfers, even those of insiders, the cancellation of promissory notes was valid consideration. *See* Fla. Stat. § 726.104 ("Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied"). *See also Ocklawaha River Farms Co. v. Young*, 74 So. 644, 647 (Fla. 1917) (finding pre-existing debt sufficient consideration).

**IV.    The sale of the Homestead was a transfer of exempt property and thus not a fraudulent transfer under Fla. Stat. § 726.105.**

For there to be a transfer which is actionable under Fla. Stat. ch. 726, there must be a transfer of an "asset". *See* Fla. Stat.§ 726.107. The definition of "asset" excludes property to the extent it is exempt. *See* Fla. Stat.§ 726.102(2). "It is well established under Florida law that exempt property may not be recovered by a trustee on fraudulent transfer grounds because such property could not have been attached by creditors before any transfer." *In re Lankry*, 263 B.R. 638, 644 (Bankr. M.D. Fla. 2001). *See also Bessemer Properties, Inc. v. Gamble*, 27 So. 2d 832, 833 (Fla. 1946) (stating that "the transfer of homestead property is not a fraud on creditors. If homestead status attached prior to proceedings to subject the property to proceedings to subject the property to creditors' lien, regardless of where title is lodged, it is exempt."); *In re Tabone*, 247 B.R. 541 (Bankr. M.D. Fla. 2000) (holding that transfer of an exempt asset to another exempt asset is not actionable).

Weiss's purchase of the Homestead was not a fraudulent transfer.

> [t]he mere fact that a person may be indebted to another does not render a conveyance of his property a fraud in law upon his creditors. The owner of property, whether real or personal, possesses the absolute right to dispose of all or any part of his property as he sees fit. *The only restriction imposed by law is that no transfer shall be made which will interfere with the existing rights of other persons.*

*Bay View Estates Corp. v. Southerland*, 154 So. 894, 899 (Fla. 1934) (citations omitted and emphasis added). Accordingly, if the Homestead was exempt property at the time it was transferred by Hill to Weiss, the Bankruptcy Court's Judgment must be vacated.

The Homestead became Hill's Florida homestead years prior to Hill even meeting Doughty and remained Hill's Florida's homestead until the sale to Weiss. The Trustee has

{JA124643;4}

even acknowledged that Hill transferred his Florida homestead to Weiss.[7]  (Tab AA p. 46).

Despite these facts, the Bankruptcy Court found that date of transfer occurred on the date the

deed was recorded on September 30, 1995 and that Hill had abandoned his homestead

interest prior to Weiss moving in.  (App. A p.12).  This finding is based on the Bankruptcy

Court's incorrect legal conclusion that the Homestead was not transferred until the warranty

deed was recorded on September 30, 1995.  If the Homestead was transferred as a matter of

law by the unrecorded quit claim deed given in May 1994, then the Bankruptcy Court

Judgment must be vacated and reversed.

Fla. Stat. § 695.01, Florida's recording statute, does not limit the transfer a homestead

to those transactions under the May 20, 1994 quit-claim deed. *See Moyer v. Clark*, 72 So. 2d

905, 906 (Fla. 1954) (finding recording statute has no effect as to transactions between

parties involved and that mere failure to record a deed does not effect title of the grantee).

The Florida Constitution provides in pertinent part that:

> The owner of homestead real estate . . . may alienate the homestead by
> mortgage, sale or gift . . . .. If the owner or spouse is incompetent, the method
> of alienation or encumbrance shall be as provided by law.

Art. X, § 4(c), Fla. Const.

Thus, the express language of the Florida Constitution distinguishes between the

method of alienation of homestead property for competent and incompetent owners. *See Art.

X, § 4(c), Fla. Const. See also State v. Jett*, 626 So. 2d 691, 693 (Fla. 1993) ("It is a settled

rule of statutory construction that unambiguous language is not subject to judicial

---

[7]  Under the principles of judicial estoppel, the Trustee should be barred from asserting a
position other than that the sale of the Homestead was a sale of exempt property to exempt
property. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002).

construction . . . "); *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992) ("One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature."). The plain and unambiguous language of Florida's constitution places no requirements on competent owners of homestead property, such as Hill, as to the appropriate method in which they may alienate their own homestead property. *See Id.* Whereas, incompetent owners of homestead property are specifically required to follow the method of alienation prescribed by applicable law, such as Fla. Stat. § 695.01. *See Id.* At least one Florida court has recognized the issue of whether a competent owner of homestead property, such as Hill, is required to comply with statutory recording and witnessing requirements which are not expressly provided in and are superceded by the Florida constitution. *See Reliable Fin. Co. v. Axon*, 336 So. 2d 1271, 1273 (Fla. 2d DCA 1976). Accordingly, Hill's conveyance by quit claim deed of his then Florida homestead was a valid sale of the Homestead under applicable Florida law and Weiss took Hill's exempt Homestead as her own Florida homestead.

As additional legal grounds to reverse the Bankruptcy Court's Judgment, the Bankruptcy Court erroneously found that legal ownership of the Homestead was necessary for Weiss to claim the Homestead as exempt – Weiss's mere possession after Hill moved out was all that was necessary. The Florida Constitution limits homestead land area but does not define or limit the estates in land to which the homestead may apply. *See Coleman v. Williams*, 200 So. 207 (Fla. 1941) (finding the homestead exemption allowable for any estate in land owned by the head of a family whether it is freehold or less as long as it does not

exceed the designated area and is in fact the family homeplace).  Courts have found that in certain circumstances possession without any title may be sufficient to support the claim of homestead.  *See Hill v. First Nat'l Bank*, 75 So. 614 (1917) (finding possession alone sufficient to cause exemption under Florida Constitution to attach when possession held by head of a family and upon agreement of title owner); *In re McAtee*, 154 B.R. 346 (Bankr. N.D. Fla. 1993) (allowing debtors to homestead protection for property under long-term lease on public land).  In *Colwell v. Royal Int'l Trading Corp. (In re Colwell)*, 196 F.3d 1225 (11th Cir. 1999), the Eleventh Circuit found valid homestead exemptions for two people who are married but legitimately living apart in separate residences, if they otherwise meet the requirements of the homestead exception, and by "legitimately" they mean that there is no fraudulent or otherwise egregious act by the beneficiary of the exemption.  *See Colwell*, 196 F.3d at 1226.  Accordingly, at the same the Homestead ceased to be Hill's Homestead when he moved out (in April or May 1994) it became Weiss's Homestead (when she moved in at about the same time and intended for the Homestead to be her Florida homestead).

In summary the Judgment should be vacated because the sale of the Homestead was not a transfer of an asset under Fla. Stat. ch. 726.  As a matter of law, Weiss established a Florida exempt homestead at the same time as Hill relinquished his homestead, so the Homestead was exempt property both before and after the sale and thus could not be a fraudulent transfer.

## V.    The Bankruptcy Court erred in failing to consider Fla. Stat. § 193.011 and other overwhelming evidence as to the value of the Homestead at the time of the sale.

In its Findings, the Court stated that "[I]n the absence of definitive, contrary evidence regarding the value, the Court values the Property at $938,000.00 at the time of the transfer."

(App. A p.7). Quite simply, the Bankruptcy Court ignored definitive, contrary evidence in the record regarding the value of the Property at the time of sale.

Under the Florida Constitution, tax assessed values are the fair market values of real property. *See* Fla. Stat. § 193.011 (2002); *State Dept. of Revenue v. Adkinson*, 409 So. 2d 53, 55-56 (Fla. 1st DCA 1982) (finding "just valuation" under Fla. Stat. ch. 193 and the Florida Constitution legally synonymous with "fair market value"); *St. Joe Paper Co. v. Brown*, 223 So. 2d 311, 313 (Fla. 1969) (stating "Certainly, there can be no question that fair market value is, under our Constitution and cases, the gauge by which all methods of valuation, statutory and otherwise, must be measured."). *See also BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) (generally discussing reasonably equivalent value); *Cohen v. Shannis (In re Shannis)*, 237 B.R. 862 (Bankr. M.D. Fla. 1999) (determining value on opinion of former owner). The 1994 Palm Beach County tax assessor determined that the "just valuation" of the Homestead was $520,577.00. (P). The 1996 Palm Beach County tax assessor's assessed value of the Property was $510,646. (R). The record additionally establishes that the value of the Homestead in 2002 was between $890,000.00 to $900,000.00, including the 2002 market value of the Homestead according to the Palm Beach County Appraiser which was $888,218.00. (S).

Weiss also performed comparative sale reviews on May 9, 1994 and April 13, 1994 respectively finding home values in the immediate area ranging from $472,000.00 to $912,000.00 with a mean value of $818,000.00 and $273,000.00 to $1,669,000.00 with a mean value of $542,300.00. (App. X pp. 329-336; App. Y pp. 60-61). On May 17, 1994, Weiss had an appraisal conducted by Sayles & Sayles which indicated a range of value for

the Homestead between $630,000.00 to $750,000.00 for the Homestead. (App. Y pp. 60-61)). A second appraisal conducted in conjunction with the State Court Action showed the established the value of the Homestead at $550,000.00 in 1995 and at $700,000.00 in 1998. (App. X pp. 335-336).

Finally, the Bankruptcy Court did not account for the state of disrepair of the Homestead in its Findings and the effect it had on the value of the Homestead at the time of the sale. At the time Weiss moved in the Homestead, the house itself was twenty-six years old and needed a new roof, had interior water damage, had rodents in roof, had rodents that had died in the walls, and had termite damage. Additionally, the slab under the house was visibly cracked, an addition to the house was falling in the water, the retaining wall and seawall required substantial repairs, and substantial landscaping was required. (App. W pp.241-242)

The Bankruptcy Court's failure to consider the evidence of tax assessed values, sanctioned by the State as the fair market value of real property, as well as the additional definitive contrary evidence that the value of the Homestead at the time of the sale was far less than $938,000 was clearly erroneous and thus constitutes reversible error.

## CONCLUSION

For the reasons set out above, Appellant Mindy M. Weiss respectfully requests that this Court REVERSE the trial court in this case and enter judgment in her favor. The Judgment must be vacated because entry of a judgment for damages under Fla. Stat. §§ 726.108, 726.109 was not an appropriate remedy under Fla. Stat. ch. 726. However, even if the sale of the Homestead was a fraudulent transfer, after making the appropriate deductions

for equitable considerations under Fla. Stat. § 108(c), the Trustee is not entitled to any money judgment. Furthermore, the sale of the Homestead was not a fraudulent transfer for numerous reasons - Doughty was not a creditor at the time of the sale and therefore had no rights to set the sale aside. Also, the sale of the homestead was a sale of exempt property and thus could not be a fraudulent transfer. Finally, the Bankruptcy Court erred in applying any doctrine of estoppel to limit the value of the consideration paid by Weiss and in its finding of value of the Homestead in the face definitive, contrary evidence.

### REQUEST FOR ORAL ARGUMENT

Appellant, Mindy M. Weiss, requests oral argument on the issues raised in this appeal.

Respectfully submitted, this 22nd day of August, 2003.

**AKERMAN SENTERFITT**

By:_____
David E. Otero
Florida Bar No. 0651370
Jacob A. Brown
Florida Bar No. 0170038
50 N. Laura St., Suite 2500
Jacksonville, FL 32202
904-798-3700 Telephone
904-798-3730 Facsimile

ATTORNEYS FOR APPELLANT MINDY M. WEISS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished by United States Mail this 22nd day of August, 2003, to Cynthia C. Jackson, Esquire, 225 Water Street, Suite 1800, Jacksonville, FL 32202 and Gordon P. Jones, P.O. Box 600549, Jacksonville, FL 32260-0459.

Attorney